IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CAROLYN N.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civil No. 22-4957 (RMB)

**OPINION**

**APPEARANCES**

Jamie R. Hall, Esq.
Olinsky Law Group
110 East State Street, Suite 12
Kennett Square, PA 19348

    *On behalf of Plaintiff*

Anne von Scheven
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of Program Litigation, Office 3
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant*

---

[1] Due to the significant privacy concerns in Social Security cases, any non-governmental party will be identified and referenced solely by first name and last initial in opinions issued in Social Security cases in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

1

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon an appeal filed by Plaintiff seeking judicial review of the final determination of the Commissioner of the Social Security Administration (the "Commissioner" and the "SSA," respectively), which denied her application for Social Security Disability benefits. For the reasons set forth herein, the Court affirms the decision of the Administrative Law Judge ("ALJ").

**I.      PROCEDURAL HISTORY**

On June 13, 2018, Plaintiff filed an application for Social Security Disability benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of disability beginning August 9, 2017. [R. at 167.] The claims were first denied on October 1, 2018, and again denied upon reconsideration on March 19, 2019. [R. at 165, 180.] On May 16, 2019, Plaintiff filed a written request for a hearing before an ALJ. [R. at 245–46.] That hearing took place on September 17, 2020. [R. at 50.] Plaintiff was represented by an attorney at the hearing, at which the ALJ heard testimony from Plaintiff. [R. at 52–87, 92–94.] The ALJ also heard testimony from a vocational expert, Joann Hayward. [R. at 88–92.] The ALJ issued her decision on January 20, 2021, finding that Plaintiff was not disabled under the Act. [*See infa* at III.C.] On June 7, 2022, the Appeals Council denied Plaintiff's renewed request for review, rendering the ALJ's decision final. [R. at 1–6.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless

of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i–v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education,

> and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

## III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff was 43 years old on the alleged onset date and 47 years old at the time of the ALJ's decision on January 20, 2021. [R. at 166.] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021, meaning that she had to establish disability on or before that date to be entitled to benefits. [*See* R. at 30.]

### A.  Plaintiff's Educational and Work History

Plaintiff completed high school and two years of college. [R. at 325.] Over twenty-seven years, she has worked as a home health aide, store manager, and retail salesperson, and waitress. [R. at 320–21.] The ALJ found that she had past relevant work experience as a skilled retail store manager and a semi-skilled waitress. [R. at 40.] The ALJ determined that Plaintiff had not engaged in substantial gainful activity between the alleged onset date, August 19, 2017, and the date Plaintiff was last insured, December 31, 2021. [R. at 30.]

**B.     Plaintiff's Medical History**

Plaintiff suffers from the following physical impairments: sciatica, [R. at 829]; post-concussive syndrome, [R. at 670]; asthma, [R. at 1138]; degenerative disc disease of the cervical and lumbar spine, [R. at 842, 1752]; depressive mood disorder, [R. 1733]; intellectual disability, [R. at 698]; chronic pain syndrome, [R. at 1684]; generalized anxiety disorder, [R. at 1734] attention deficit hyperactivity disorder (ADHD), [R. at 700]; panic disorder, [R. at 835] bipolar mood disorder, [*Id.*]; dysphagia, [R. 989]; gastroesophageal reflux disease, [R. at 1053]; dyspepsia, [R. at 1144]; H. pylori infection, [R. at 1248]; colitis, [R. at 1693]; hepatic hemangioma, [R. at 1721]; hypertension, [R. at 97]; dyslexia, [R. at 556]; and migraines, [R. at 135].

**C.     The ALJ's Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period of August 19, 2017, through December 31, 2021. [R. at 30.]

At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: sciatica, post-concussive syndrome, asthma, degenerative disc disease of the cervical and lumbar spine, depressive mood disorder, intellectual disability, chronic pain syndrome, generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), panic disorder, and bipolar mood disorder. [*Id.*] But the ALJ found that Plaintiff's dysphagia, gastroesophageal reflux disease, dyspepsia, H. pylori

6

infection, colitis, hepatic hemangioma, hypertension, dyslexia, and migraines were non-severe impairments. [*Id.*]

At Step Three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. [R. at 31.]

At Step Four, the ALJ found that, during the relevant period, Plaintiff had the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to temperature extremes, wetness, humidity, vibration, and all pulmonary irritants. The claimant must avoid all exposure to work place hazards such as unprotected heights, dangerous moving machinery, and uneven ground. The claimant can perform simple routine tasks in an environment not involving fast-paced production requirement[s], but involving simple work related decisions and occasional workplace changes. The claimant can perform a job in which directions can be given orally or demonstrated, but not in writing.

[R. at 34.] The ALJ also found that Plaintiff was unable to perform any past relevant work due to her RFC. [R. at 40.]

At Step Five, the ALJ found that, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." [R. at 40.] Therefore, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from August 9, 2017, through the date of the decision. [R. at 42.]

7

## IV.   DISCUSSION

Plaintiff raises three arguments in support of remand. First, she argues that the ALJ failed at Step Three to address a certain Listing—Listing 11.18—despite evidence that Plaintiff met the requirements of Listing 11.18. Second, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of a consultive psychological examiner, Dr. Barry Kardos. Finally, Plaintiff argues that the ALJ failed to resolve a conflict between the vocational testimony and the RFC adopted by the ALJ. Each argument fails.

### A.   The ALJ Did Not Err at Step Three in Failing to Discuss Listing 11.18

First, Plaintiff argues that the ALJ's Step Three determination improperly failed to discuss Listing 11.18 regarding traumatic brain injuries. [Pl.'s Br. at 10–11.] Plaintiff argues that consideration of Listing 11.18 was appropriate because she sustained a traumatic brain injury following a motor vehicle crash in 2016. [Pl.'s Br. at 5 (citing R. at 700).]

"[A] plaintiff must show that all, not merely some, of the criteria for a listing have been met in order for the plaintiff to medically equal that listing." *Lopez v. Berryhill*, 2017 WL 5889740, at *4 (D.N.J. Nov. 28, 2017) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). An ALJ "need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it

8

relates to the Listing requirements." *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008). An ALJ's Listing analysis must be read together with the decision as a whole. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Plaintiff and Defendant agree on the standard to support a finding of disability under Listing 11.18. Under Listing 11.18, a social security claimant must demonstrate (i) marked limitation in physical functioning; and (ii) marked limitation in one of four areas of mental functioning, persisting for at least three consecutive months after the injury:

> (1) Understanding, remembering, or applying information;
> (2) Interacting with others;
> (3) Concentrating, persisting, or maintaining pace; or
> (4) Adapting or managing oneself.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.18(B).

Although the ALJ did not explicitly consider Listing 11.18, "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [Plaintiff] did not meet the requirements for any listing, including" Listing 11.18. *Jones*, 364 F.3d at 505. First, the ALJ found that following the motor vehicle accident, a CT scan of Plaintiff's brain was "unremarkable." [R. at 36 (citing R. at 452).] This evidences that Plaintiff had not suffered a traumatic brain injury such that Listing 11.18 was relevant in the first place.

Second, the four areas of mental functioning listed as a part of 11.18(B) mirror the paragraph B criteria for evaluating mental impairments under Listings 12.04

9

(depressive, bipolar and related disorders), 12.05 (intellectual disorders), and 12.06 (anxiety and obsessive-compulsive disorders) each of which the ALJ *did* consider and found to be inapplicable. [R. at 31–32; *compare* 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.18(B), *with* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(B), 12.05(B), 12.06(B).] Because the ALJ engaged in a detailed analysis of the Listing 12.04–06 paragraph B criteria, considering the same kind of evidence Plaintiff contends would also be relevant to an analysis under Listing 11.18(B), such as Plaintiff's low IQ score, poor concentration, and varied memory, the Court finds that the ALJ did not err at Step Three. *Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 122 (3d Cir. 2008) (finding that the "ALJ's failure to discuss specific Listings is not reversible error ... because the ALJ analyzed all the probative evidence and explained [her] [d]ecision sufficiently to permit meaningful review"); *Kuhl v. Saul*, 2020 WL 6537198, at *6 (D.N.J. Nov. 6, 2020) (same).

      **B.**    **The ALJ Did Not Improperly Evaluate the Opinion of Dr. Kardos such that the RFC Was Unsupported by Substantial Evidence**

Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because she failed to "properly evaluate the opinion [of] Barry Kardos, Ph.D.," the psychologist who examined Plaintiff at the agency's request. [Pl.'s Br. at 15.] Specifically, Plaintiff argues that the ALJ erred in determining that parts of Dr. Kardos's opinion were inconsistent with the broader medical record because the ALJ, without support, favored objective treatment notes rather than Dr. Kardos's own diagnoses and observations. [*Id.* at 16–17.] The Court disagrees.

10

When considering medical opinion evidence to determine an individual's residual functional capacity, the regulations require an ALJ to consider the opinion's persuasiveness. 20 C.F.R. § 404.1520c(a). An ALJ's consideration of the persuasiveness of opinion evidence is guided by two primary factors: supportability and consistency.[2] Supportability is "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source," and consistency is "the extent to which the medical source's opinion is consistent with the record as a whole." *Nicholas R. v. Kijakazi*, 2023 WL 3580837, at *5 (D.N.J. May 19, 2023). "Although the ALJ may weigh the credibility of the evidence, [she] must give some indication of the evidence which [she] rejects and [the] reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

Dr. Kardos's opinion explained that Plaintiff would (i) have trouble understanding, carrying out, and remembering simple two-step directions; (ii) have difficulty interacting socially on a consistent basis with supervisors, coworkers and the public; (iii) have difficulty dealing with normal pressures in a competitive work setting; and (iv) need assistance in handling her own funds. [R. at 702–03.] The ALJ

---

[2] The ALJ can also consider other factors including the length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. *Nicholas R.*, 2023 WL 3580837, at *5 (citing 20 C.F.R. § 404.1520c).

found Dr. Kardos's opinion persuasive in some respects but "vague about the impact [such] limitations would have on a person and their ability to perform activities of daily living sufficiently." [R. at 39.] With respect to supportability, the ALJ explained that Dr. Kardos's opinion was supported by a "detailed interview with [Plaintiff], which demonstrated that [Plaintiff] is independent in her activities of daily living, with signs of varied memory, difficulty persisting in tasks, and poor judgment and insight." [R. at 40.] Further, the ALJ noted that Dr. Kardos's opinion was supported by the "longitudinal medical record including consultative examinations showing varied memory and difficulty concentrating, [and] reports of mood swings." [*Id.*] And with respect to consistency, the ALJ explained that while Dr. Kardos's observation of Plaintiff's varied memory, difficulty persisting in tasks, and poor judgment and insight was supported by and was consistent with the longitudinal medical record, "objective medical observations routinely noted that [Plaintiff] had intact insight and judgment with no signs of psychotic thoughts, no inpatient treatment, refusal of psychiatric medications, and reports that [Plaintiff] is independent in her activities of daily living." [*Id.*]

    The Court finds no error in the ALJ's treatment of Dr. Kardos's opinion. The ALJ explained that there were inconsistencies between the objective medical evidence and Dr. Kardos's opinion. The ALJ did not err in resolving those inconsistencies in favor of the objective medical evidence. Specifically, the ALJ noted that Plaintiff was "routinely" described as "calm, pleasant, and cooperative with fair insight, judgment, and no psychotic thoughts, which do not reflect her

12

allegations of anxiety, mood swings, and difficulty getting along with others," [R. at 38 (citing R. at 566, 702, 834, 1033, 1431, 1649)], as well as "alert and oriented with intact recent and remote memory, attention, and concentration," [R. at 37 (citing 479, 543, 839, 1024-25, 1637, 1654, 1734)]. Thus, the ALJ did not err in crediting routine and regular observations from the broader medical record over portions of Dr. Kardos's opinion because there was substantial evidence that the opinion was only partially persuasive. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason.") (internal citations omitted).

Plaintiff, relying on *Brownawell v. Comm'r of Soc. Sec.*, contends that the ALJ's "heavy reliance on the objective evidence in notes taken during routine medical examinations" was improper because a "doctor's assessment of a patient during an examination does not necessarily contradict a seemingly more restrictive statement about the patient's 'ability to function in a work setting.'" [Pl.'s Br. at 16 (quoting 554 F.3d 352, 356 (3d Cir. 2008)).] Plaintiff argues that in *Brownawell*, the Third Circuit "admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work." [Pl.'s Br. at 17 (quoting 554 F.3d at 356) (internal citation omitted).] But in *Brownawell*, the ALJ rejected the opinion of a consulting psychologist regarding the plaintiff's abilities based on apparent inconsistencies between the consulting psychologist's own treatment notes and his final written

13

opinion. 554 F.3d at 356. "*That* is the type of reasoning the Third Circuit rejected and 'admonished' in *Brownawell*." *Grove v. Comm'r of Soc. Sec.*, 2023 WL 6276696, at *3 (M.D. Pa. Sept. 26, 2023) (emphasis supplied) (quoting *Brownawell*, 54 F.3d at 356). Here, by contrast, the ALJ found some of Dr. Kardos's opinion unpersuasive because the record as a whole did "not reflect the exhibition of significant behavioral, cognitive, memory, or attentional deficits by Plaintiff." *Grove*, 2023 WL 6276696, at *3. There was substantial evidence supporting that decision. *Supra* at 11–12. Thus, the ALJ did not err in its evaluation of Dr. Kardos's opinion in determining Plaintiff's RFC.

      **C.**    **Plaintiff Fails to Identify a Conflict at Step Five Between the Vocational Testimony and the Adopted RFC**

Finally, Plaintiff argues that, at Step Five, the ALJ failed to resolve a conflict between the vocational expert's testimony and the RFC ultimately adopted. Plaintiff contends that although the ALJ's RFC limited Plaintiff to jobs involving only "simple routine tasks" in which "directions can be given orally or demonstrated, but not in writing," [R. at 34], the vocational expert identified jobs from the Dictionary of Occupational Titles ("DOT") that Plaintiff could perform consistent with her limitations—information clerk and addresser—both of which are "particularly suspect" to requiring written rather than oral instruction. [Pl.'s Br. at 20.]

Plaintiff cites no evidence that the positions of information clerk and addresser are "particularly suspect" to involving written rather than oral instructions such that there would be a conflict between the vocational testimony and the RFC. Plaintiff

14

simply recites the provided descriptions from each position's DOT entry and explains, without support, that "[t]he need for written directions, written examples, and written corrections—as opposed to only oral instructions—would be imperative" in each position. [Pl.'s Reply at 5–6 (summarizing DOT entries for information clerk and addressor positions and concluding that job descriptions necessarily require written instruction).] That conclusion is not apparent to the Court, and it is contrary with the vocational expert's testimony on the record that there were jobs existing in the economy that a person with Plaintiff's limitations would be able to perform. [R. at 91–92.] The vocational expert stated that her testimony was consistent with the DOT and was based on her vocational education, training, and experience. [R. at 92.] The Court will not second guess that conclusion and is thus not persuaded that the ALJ erred at Step Five. *See John G. v. Comm'r of Soc. Sec.*, 2022 WL 3678108, at *9 (D.N.J. Aug. 25, 2022) (declining to second guess vocational expert's testimony).

V.   CONCLUSION

For the foregoing reasons, the decision of the ALJ is **AFFIRMED**. An accompanying Order shall issue.

| | |
|---|---|
| **November 30, 2023** | **s/Renée Marie Bumb** |
| Date | RENÉE MARIE BUMB |
| | Chief United States District Judge |

15